UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADLEY MEEHAN and CESAR E. CIRVERA SANTAMARIA, *on behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ROADMASTER DRIVERS SCHOOL, INC.,<br><br>Defendant. | C.A. NO. 5:22-CV-04299-JMG<br><br>JURY TRIAL DEMANDED |

**AMENDED COMPLAINT - CLASS ACTION**

**I.   NATURE OF THE ACTION**

1. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated for damages arising from Defendant's violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. ("CPL"), breach of warranties and for unjust enrichment.

2. Plaintiffs were contractually promised a "CDL Examination" when they contracted with Defendant and paid tuition and fees.

3. Defendant agreed to provide students like Plaintiffs with 180 hours of training and a valid CDL Examination as the two foundational terms of their agreement with Roadmasters.

4. Defendant did not provide a valid CDL Examination. Instead, Defendant provided "improperly conduct[ed] skills testing" as a materially different substitution of its obligations under the contract.

1

5. Students like Plaintiff Corvera lost their CDL license and will have to wait significant amount of time to retest and reobtain the CDL Licenses, while losing income and wages as a result.

6. Students like Plaintiff Meehan made arrangements with other schools and training facilities to retest, including by paying out of pocket for the retesting and making arrangements with for other schooling that costed approximately $6,000.

7. As a result, Plaintiffs lost tuition, fees, income, revenue, and time to obtain the actual CDL Examination they were promised, agreed to receive, and paid for.

8. Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of tuition and fees paid to it, proportionate to the damages suffered by Plaintiffs and members of the Class, including the loss of income, lost revenue, lost jobs, and other harm associated with not receiving the services they paid for.

9. Plaintiffs also seek damages relating to Defendant's passing off their Commercial Driving License training program as complete and capable of achieving a valid CDL license for students who complete the program.

## II.   THE PARTIES

4. Plaintiff Bradley Meehan is an adult individual and a citizen of the State of New York, residing at 4 Eugene Drive, Kings Park, New York 11754.

5. Plaintiff Cesar E. Corvera Santamaria is an adult individual and a citizen of the Commonwealth of Pennsylvania, residing at 4017 Redwood Drive, Bethlehem, Pennsylvania 18020.

6. Each Plaintiff paid approximately $7,090 in tuition, fees and various other costs to Defendant for the training program.

7. Defendant Roadmaster Drivers School, Inc. is incorporated in Florida and maintains its principal place of business in Florida.  It also owns, operates, and manages several

CDL Training Schools across the United States, including locations attended by Plaintiffs and Class members. One such location lies within the Eastern District of Pennsylvania at 4219 Fritch Drive, Bethlehem, PA 18020, and is the location Plaintiffs attended for CDL training.

### III.  JURISDICTION AND VENUE

8. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the incidents giving rise to the claims herein occurred in this District.

10. The Court has personal jurisdiction over Defendant because the acts and transactions giving rise to this action occurred in this district, and because Defendant conducts substantial business in this district.

### IV.  FACTUAL ALLEGATIONS

11. Established in 1992, Roadmaster Drivers School, Inc. ("Roadmaster") owns, operates, and manages many Commercial Drivers License ("CDL") Training Schools across the United States, including locations attended by Plaintiffs and Class members.

12. Roadmaster holds itself out to the public as being a premier CDL training facility, and Roadmaster markets and advertises its reputation, history, experience, and quality of service in advertising and promotional materials provided to customers and the public at large.

13. Indeed, as part of its promotional materials and marketing, Roadmaster represents that it is "an industry-leading **CDL training school** that provides experienced truck driving school instructors and offers students comprehensive **CDL classes** and behind-the-

wheel truck driving education so they are fully prepared to start their new job in the trucking industry."

14. Roadmaster operates numerous teaching and service locations throughout the United States, including the location attend by Plaintiffs at 4219 Fritch Drive, Bethlehem, Pennsylvania.

15. Through those facilities and services, Roadmaster offered, advertised and contracted services to students from local areas and neighboring states.

16. Students and Roadmaster contracted for training and instruction services, including for those associated with obtaining a CDL.

17. Students enrolled at Roadmaster contracted for, and expected to receive, the quality CDL training they were promised in the advertising and marketing Roadmaster disseminated.

18. Roadmaster marketed and represented that it had the required teachers, training, protocols, and government certifications to train and teach students in the manner sufficient to obtain a CDL.

19. Roadmaster contracted for, represented to provide, and was obligated to provide students with certified CDL license testing, in compliance with the requirements of various state entities, including the Pennsylvania Department of Transportation ("PennDOT") rules and regulations.

20. On or about July 15, 2022, graduates of Roadmaster received a letter from various government entities, including PennDOT, informing them that their CDL licenses were improperly issued, and that Roadmaster had not complied with governmental regulations, and that students (like Plaintiffs) must retake their CDL exam or would lose their license.

21. Defendant breached its contractual obligations to students, like Plaintiffs, and were unjustly enriched because students paid for specific services they never received and were required to spend monies for services that were not provided.

22. Defendant failed to provide CDL testing that complied with governmental regulations.

23. Students like Plaintiffs were harmed as a result of Defendant's actions, including the loss of income, lost revenue, lost jobs, and other harm associated with not receiving the services they paid for.

24. For example, Plaintiff Cesar Corvera received the letter from the PennDOT in or around July 2022, his license was revoked, and he has lost about half of his weekly income because of Defendant's actions, including receiving approximately $720 less in weekly income from his employer because his CDL is not valid. Additionally, Plaintiff Corvera will be required to take an entire week off of work to retest at some point in the future. In total, Plaintiff Corvera has lost thousands of dollars in income and wage payments because of Defendants' failure to follow the necessary protocols.

25. For example, Plaintiff Meehan received a letter from the New York State Department of Transportation and immediately made arrangements to receive additional training from another school and paid to retest out of his own pocket. Plaintiff Meehan estimated that the new schooling cost approximately $6,000.

26. During all relevant time periods, Defendant engaged in a pervasive, deceptive scheme, whereby Roadmaster induced customers into utilizing Defendant's services based on deceptive and inaccurate documents and provided documents to its customers that reflected services that were not actually provided.

27. As detailed below, the Plaintiffs and Class members were unknowingly subjected to these deceptive business schemes by Defendant and its agents.

28. Plaintiffs Meehan and Corvera are not in a position to know precisely what steps, procedures, or protocols Defendant failed to follow, but Plaintiffs are aware those steps, procedures, or protocols were not followed based on the July 2022 letter from the PennDOT.

29. Plaintiffs would not have paid tuition and fees had Defendant disclosed that it was not going to follow the steps, procedures, and/or protocols required by the PennDOT or other governmental organizations related to CDLs.

30. Defendant's compliance with those procedures and protocols were fundamental to Plaintiffs' payment of tuition and fees, as well as their enrollment at Roadmasters.

31. As a result, Defendant has financially damaged Plaintiffs and the Class members, including by lost tuition and fee payments, lost wages, lost income, and other damages associated with obtaining the proper testing and certification for their CDLs.

32. Plaintiffs bring this suit because Plaintiffs and the Class members did not receive the full value of the services for which they paid. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

33. Defendant is not entitled, by either contract or equitable principles, to pass the entire cost of its now-discovered invalid CDL testing process to its students. Plaintiffs and the Class are entitled to a refund of the tuition, fees, and other related payments for educational and testing services that were advertised to lead to a valid Class A CDL license.

34. Plaintiffs seek, for themselves and the Class, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of classes and testing that led to the July 2022 revocation of their CDL licenses without further testing.

35. Plaintiffs also seek the recoupment of costs associated with retesting and finding testing that qualifies as a CDL Examination under the proper governmental rules and regulations.

36. Plaintiffs also seek the amount of harm caused by Defendants including lost wages, income, revenue, and interests, when compared to the amount they would have received if Defendant had acted properly and in compliance with its expressed and implied promises.

### V. CLASS ACTION ALLEGATIONS

37. Plaintiffs seek to represent a Class defined as:

> Any and all students, and any other person(s) who paid or caused to be paid tuition and/or fees or other related educational expenses to Roadmaster Drivers School, Inc. that later had their Commercial Drivers License declared to be improperly issued due to improper conduct during skills testing by an employee or agent of Roadmaster Drivers School, Inc.

Specifically excluded from the Class are Defendant, Defendant's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

38. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

39. **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiffs at this time, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

40. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

        a)      whether Defendant accepted money from Class members in exchange for the promise to provide services;

        b)      whether Defendant provided the services for which Class members contracted;

        c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

        d)      whether Defendant is liable to Plaintiffs and the Class for unjust enrichment.

41.    **Typicality.** Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

42.    **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

43.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

44. In the alternative, the Class may also be certified because:

a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant; and/or

b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I

**Violation of the Unfair Trade Practices and Consumer Protection Law,
73  P.S. 201-1,** *et seq*.

45. Plaintiffs restate, reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

46. The conduct of the Defendant, as set forth above, constitutes an unfair and deceptive trade practice prohibited under the Pennsylvania Unfair Trade Practices and Consumer Protection Law in that Defendant has failed and/or refused to comply with its written warranty to provide students with certified CDL license training in compliance with the requirements of various state entities including PennDOT, and has engaged in other deceptive conduct which creates a likelihood of confusion.

47. Plaintiff Cordera lost his CDL license issued in Pennsylvania and has lost income as a result.

48. Plaintiff Meehan attended school in Pennsylvania for the primary purpose of being given the opportunity to take a valid CDL Examination, but had to pay additional money out of pocket to retest and made arrangements for additional schooling such that he could retest and maintain his licensing in New York State.

49. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the class have suffered ascertainable losses and are entitled to the remedies prayed for above and recapitulated in the prayer for relief below.

## COUNT II
### Breach of Contract

50. Plaintiffs restate, reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

51. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

52. Through the Enrollment Agreement and payment of tuition and fees, Plaintiffs and each member of the Class entered into a binding contract with Defendant.

53. As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide CDL training and testing services that would, upon completion, result in a valid CDL license to Plaintiffs and the members of the Class.

54. Plaintiffs and Class members fulfilled their end of the bargain when they paid monies due and completed the training and signed up for the testing provided by Defendant.

55. Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above but has retained monies paid by Plaintiffs and the Class.

56. Defendant's documents and materials reflected that Plaintiffs would be entitled to one "CDL Examination" after 180 clock hours of training.

57. Plaintiffs did not receive "CDL Examination" because the CDL testing was not in compliance with Pennsylvania's' testing requirements because "[T]he Third-Party tester, who initially administered your CDL skills test, was improperly conducting skills testing."

58. Therefore, Defendant failed to actually provide a "CDL Examination" and instead presented Plaintiffs with an improper skills test that was invalid as a CDL test under Pennsylvania and New York law.

59. Defendant failed to take the necessary steps expressed or implied in that contract agreement that it would have the necessary qualifications, procedures, protocols, and processes to ensure that any CDL testing was valid and would be approved by the appropriate government entities.

60. Plaintiffs understood and reasonably expected to receive testing that was in compliance with governmental procedures, including those associated with the PennDOT and other governmental organizations.

61. Plaintiffs are not positioned to know precisely what procedures, protocols, and steps Defendant should have taken to comply with the governmental regulations, but that was part of the basis for Plaintiffs paying tuition and fees to Defendant in the first place – Roadmasters' understanding and compliance with governmental rules to provide Plaintiffs with the opportunity to validly test for a CDL.

62. Plaintiff Corvera did not receive the CDL testing in accordance with the PennDOT requirements and had his CDLs invalidated.

63. After losing his CDL, Plaintiff Corvera has lost income and wages associated with not receiving the CDL Examination timely and will lose future income and wages because of his need to retest.

64. Plaintiff Corvera is earning approximately half of what his weekly salary was when he had a CDL, at a loss of approximately $720 per week.

65. Plaintiff Corvera will continue to lose income until he is able to take a valid CDL Examination that complies with the governmental regulations.

66. Plaintiff Meehan received a letter from the New York State Department of Transportation stating that he was at risk of losing his CDL, and he understood from his fellow students that the improper skills testing was not a valid CDL Examination, so he made arrangements for additional testing and additional schooling.

67. Plaintiff Meehan estimates that additional schooling cost $6,000 and he paid out pocket for the retesting in the amount of a couple hundred dollars.

68. Plaintiffs and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to the loss of a valid CDL license, lost income, lost revenue, lost jobs, and other harm associated with not receiving the services they paid for.

69. Plaintiffs and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to the costs and expenses associated with new schooling and the appropriate testing.

70. As a direct and proximate result of Defendant's breach, Plaintiffs and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver.

## COUNT III
### Unjust Enrichment

71. Plaintiffs restate, reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

72. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant, and in the alternative to Count I.

73. Plaintiffs and members of the Class conferred a benefit on Defendant in the form of monies paid for CDL training and testing services. These payments for tuition and other various fees were intended to result in the students achieving a valid CDL license upon completion.

74. Defendant voluntarily accepted and retained this benefit by accepting payment.

75. Defendant has retained this benefit, even though it failed to provide the full education and testing services for which the tuition and fees were collected.

76. It would be unjust and inequitable for Defendant to retain benefits in excess of the services it provided, and Defendant should be required to disgorge any tuition, fees and related expenses that exceed the value of the services actually provided by Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

B. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

C. For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D. For prejudgment interest on all amounts awarded;

E. For an order of restitution and all other forms of equitable monetary relief;

F. For injunctive relief as pleaded or as the Court may deem proper; and

G.  For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.  All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

Dated: December 7, 2022

/s/ James A. Francis
**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis
John Soumilas
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

&

Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*To Apply Pro Hac Vice*

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day I caused a true and correct copy of the foregoing to be filed via the court's ECF/CM system, which shall provide notification to the following:

Josh J.T. Byrne
Vlada Tasich
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jtbyrne@mdwcg.com
vtasich@mdwcg.com

Dated: December 7, 2022             */s/ James A. Francis*
                                              James A. Francis